**In the Matter of Harry FONDILLER, Debtor.**

**No. C 90–20291–JW.**

United States District Court, N.D. California.

April 11, 1991.

William T. McGivern, Jr., Jay R. Weill, Erik P. Doerring, U.S. Attys., San Francisco, for petitioner.

Edward A. Kent, Jr., Palo Alto, Cal., for debtor.

## ORDER

WARE, District Judge.

The United States appeals a decision of the U.S. Bankruptcy Court discharging an estate from tax liability under 11 U.S.C. § 505(b). The United States contends that, contrary to the bankruptcy court's ruling, the estate is not a "successor to the debtor" as defined in § 505(b). For the reasons set forth below, the decision must be reversed. An estate is not included as a discharged party under § 505(b).

## FACTS

This appeal arises from the bankruptcy proceedings of Harry Fondiller ("the debtor"). An involuntary Chapter 7 petition was filed against the debtor on April 24, 1980. Jerome A. Robertson was appointed as trustee for the estate. The proceedings continued over the course of several years.

On March 31, 1988, Robertson, as trustee, filed fiduciary tax returns with the Internal Revenue Service for the tax years 1981 through 1987. Along with the tax returns, the trustee requested a prompt determination of the estate's tax liability as allowed under 11 U.S.C. § 505(b). Section 505(b) provides that unless the trustee's tax return is fraudulent, the trustee, the debtor, and any successor to the debtor are discharged from any further tax liability upon payment of the tax shown in the return, unless within 60 days, the IRS notifies the trustee that the return has been selected for audit. The IRS did not respond to the trustee's request within the required 60 day period.

On August 15, 1988, after the 60 day notice period had expired, the IRS notified the trustee that a refund was due on the 1981 and 1982 taxes. On November 11, 1988, the IRS corrected itself and filed a claim for $15,440 in interest and penalties for 1981 and $1,032.20 in interest and penalties for 1982. The claim of the IRS was later adjusted to $11,168.23 and $1,233.07 for the 1981 and 1982 years, respectively.

The United States concedes that under § 505(b), the debtor and the trustee are discharged from any liability for these 1981 and 1982 taxes and penalties because the IRS did not respond to the trustee's request within the 60 day time period. However, the IRS seeks to recover the tax owed from *the estate* itself.

The Bankruptcy Court held that the estate is also discharged under § 505(b) for two reasons. First, the court found that the estate, by definition, is the "successor to the debtor", and is thus expressly discharged. Secondly, the bankruptcy court held that § 505(b) reflects a Congressional policy to allow an estate to be closed without further liability if the IRS does not promptly respond to a request for tax determination.

A notice of appeal was filed by the United States on April 6, 1990. This District Court has jurisdiction to hear appeals from cases referred to bankruptcy judges under 28 U.S.C. § 157. An appeal can only be taken to the district court for the judicial district in which the bankruptcy judge is serving. 28 U.S.C. § 158.

## STANDARD OF REVIEW

The District Court reviews all Bankruptcy Courts' findings of law *de novo*. Findings of fact are reviewed under the clearly erroneous standard. *See In re*

*Tucson Estates, Inc.,* 912 F.2d 1162, 1166 (9th Cir.1990).

## DISCUSSION

■ 11 U.S.C. § 505(b) is part of the Bankruptcy Act of 1978. In full, it reads:

(b) A trustee may request a determination of any unpaid liability of the estate for any tax incurred during the administration of the case by submitting a tax return for such tax and a request for such a determination to the governmental unit charged with responsibility for collection or determination of such tax. Unless such return is fraudulent, or contains a material misrepresentation, the trustee, the debtor, and *any successor to the debtor* are discharged from any liability for such tax—

(1) upon payment of the tax shown on such return, if—

(A) such governmental unit does not notify the trustee, within 60 days after such request, that such return has been selected for examination; or

(B) such governmental unit does not complete such an examination and notify the trustee of any tax due, within 180 days after such request or within such additional time as the court, for cause, permits [emphasis added].

## A. SUCCESSOR TO THE DEBTOR

The bankruptcy code does not define the phrase "successor to the debtor" as used in § 505(b). The *Fondiller* Court relied on the decision *In re Graham,* 110 B.R. 408 (Bankr.S.D.Ind.1990), for its holding that the estate qualifies as a successor to the debtor. *Graham* concerns § 544 of the Bankruptcy Code, which gives a trustee power to invalidate transfers of property as if the trustee were a bona fide purchaser of real estate from the debtor. In discussing the priority given a trustee, the district court refers to the estate as being "a successor to the interests of the Debtor ..." *Graham,* 110 B.R. at 410. However, the use of that phrase in the *Graham* decision is not authority for holding that, as a matter of law, the estate is a "successor to the debtor" for purposes of § 505(b).

The bankruptcy court in, *In re Rode,* 119 B.R. 697 (Bankr.E.D.Mo.1990), compared the *Graham* and the *Fondiller* decisions and determined that § 505(b) and § 544 of the Bankruptcy Code involve unrelated issues. In addition, the court stated that in the context of *Graham,* it was proper to find that the estate was the "successor in interest to the debtor," but that "when placed in a section 505(b) context, such a statement takes on a completely different meaning which, as will become apparent, this Court does not believe is appropriate." *In re Rode,* 119 B.R. at 699.

The conclusion that the estate is not discharged from tax liability is further supported by the language of § 505(c). Section 505(c) specifically uses the term "estate" as distinct from a "successor to the debtor".

... the governmental unit charged with responsibility for collection of such tax may assess such tax against the *estate, the debtor,* or a *successor to the debtor,* as the case may be, subject to any otherwise applicable law. 11 U.S.C. § 505(c) [emphasis added].

The statutory language indicates that for the purpose of § 505, the "estate" and the "successor to the debtor" are two separate entities and are not, as the Bankruptcy Court found, one and the same.

## B. CONGRESSIONAL POLICY

The Bankruptcy Court further stated that the Congressional policy which underlies § 505(b) supports its conclusion that the estate should be discharged from tax liability.

[This] court is persuaded by the plain meaning and purpose of Section 505(b). There is a clear Congressional policy embodied therein that the IRS must promptly respond to expedited audit requests so that the closing out of bankrupt estates may be more efficiently accomplished. *In re Fondiller,* Bankruptcy No. 580–01179 (N.D.Cal. March 30, 1990) (LEXIS, Bankr. library)

Undoubtedly, expeditious audit determination was an intention of Congress in passing § 505(b). However, as stated in the

House Report on the Reform Act of 1978, the purpose of the statute:

   ... is to protect the trustee from personal liability for a tax falling on the estate that is not assessed until after the case is closed. If necessary to permit expeditions (sic) closing of the case, the court, on request of the trustee, must order the governmental unit charged with the responsibility for collection or determination of the tax to audit the trustee's return or be barred from attempting later collection. H.R.Rep. No. 595, 95th Cong, 1st Sess. 356 (1977), U.S.Code Cong. & Admin.News 1978, 5787, 6312.

In a Chapter 7 proceeding the estate is a separate taxable entity which exists solely because of the bankruptcy proceedings. 26 U.S.C. § 1398. It would not be fair to hold the trustee liable for the taxes incurred by the estate during the bankruptcy administration, thus § 505(b) discharges that party as long as procedures are followed. This protection of the trustee seems to be the real focus of Congressional intent in passing the section.

Section 505(b) was adopted largely in response to the case, *In re Statmaster Corp.*, 465 F.2d 978 (5th Cir 1972). *See* H.R.Rep. No. 595, 95th Cong, 1st Sess. 356 (1977); *Goldblatt Bros. v. United States*, 106 B.R. 522, 532 (Bankr.N.D.Ill.1989). The Fifth Circuit affirmed the district court in overruling a bankruptcy court's decision in a case involving taxes assessed against an estate. The bankruptcy court concluded that a trustee should be discharged from tax liability after filing a return with the IRS. Congress subsequently partially codified the bankruptcy court's decision in § 505(b). H.R.Rep. No. 595, 95th Cong, 1st Sess. 356 (1977). While acknowledging the trustee's dilemma, the bankruptcy court stated that the crucial issue in the case concerned the liability of the trustee for the administrative taxes. *In re Statmaster Corp*, 332 F.Supp. 1248, 1252 (S.D.Fla. 1971). The speed by which an estate is liquidated was not an issue, although it was recognized by the bankruptcy court as one of the trustee's goals. *See id.; see also, In re Rode*, 119 B.R. at 699–700 ("... the legislative history of section 505(b) of-

fers no support for the argument that the estate may be discharged from further tax liability").

Even assuming that § 505(b) embodies Congressional policy to terminate tax liability when the IRS does not act quickly in order to allow estates to close in an expeditious manner, such a policy is inapplicable in this case because the estate was not closed at the time the IRS filed its claim. A different result would be required if the IRS filed its claim after the estate was closed and its assets already distributed. Estate assets in the hands of the debtor or any other person cannot be reached by an IRS claim after the estate is closed. However, if the claim is otherwise timely made, § 505(b) does not preclude the claim from being allowed against the estate.

## CONCLUSION

The judgment of the bankruptcy court is therefore REVERSED and the case is REMANDED for proceedings consistent with this determination.

IT IS SO ORDERED.